UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH MURPHY, ET AL.,

              Plaintiffs,

v.

THE PROCTOR & GAMBLE
COMPANY,

              Defendant.
_____/

No. 08-15170

Honorable John Feikens
United States District Judge

Honorable R. Steven Whalen
United States Magistrate Judge

## REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion to Dismiss Counts II and III of the First Amended Class Action Complaint [Docket #18], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  Because these claims are barred by the economic loss doctrine, I recommend that the Defendant's motion be GRANTED, and that Count II (common law fraud) and Count III (silent fraud) of the Plaintiffs' complaint be DISMISSED.

## I.   BACKGROUND

On its face, this case is about razor blades. Proctor & Gamble ("P&G") manufactures and markets a wide range of consumer good, including the Gillette brand razors and razor blades. P&G produces two straight razor blade handles marketed under the name "Gillette Fusion."  Both utilize five razor blades in one cartridge.  One handle, the "Fusion Power Handle," houses a battery that causes the attached blade cartridge to vibrate; the other, the "Fusion Handle," is not battery operated.

P&G also produces and markets two different blades to be used with the Fusion

Handle systems.  One is designated the Fusion Power cartridge, and the other is simply

called a Fusion cartridge. The Fusion Power cartridges cost about $1.00 more for a

package of four cartridges.  The Plaintiffs allege that the packaging of the Fusion Power

cartridges lead consumers to believe that they are related to and must be used with the

Fusion Power handles, but that in fact, there is no difference between the blades.  The

Plaintiffs contend that this deception "exemplif[ies] the corporate greed and moral decay

that seems to have taken hold in the USA Corporate World and which is now the subject

matter of attack by the American people." *Answer to Defendant's Motion to Dismiss*, p.6.

Count I of the First Amended Complaint alleges violation of state consumer

protection statutes, and Count IV seeks injunctive relief.  Those counts are not at issue in

this motion.  Counts II and III allege state law claims of common law fraud and silent

fraud, respectively.  Defendant seeks dismissal of those claims under Fed.R.Civ.P.

12(b)(6).

## II.    STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the

pleading to state a claim upon which relief can be granted."  Rule 12(b) also provides that

if, on consideration of a motion under paragraph (6), "matters outside the pleadings are

presented to and not excluded by the court, the motion shall be treated as one for summary

judgment and disposed of as provided in Rule 56 (summary judgment)."  In assessing a

Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks

whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270

F.3d 416, 419 (6th Cir. 2001).

In two recent cases, the United States Supreme Court altered the standard for

determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In In

*Bell Atlantic Corp. V. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2),[1] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937,__L.Ed.2d__ (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*.[2] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. At 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as
> the Court of Appeals observed, be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common sense. But
> where the well-pleaded facts do not permit the court to infer more than the
> mere possibility of misconduct, the complaint has alleged–but it has not

---

[1] Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

[2] *Twombley* was an antitrust case. *Iqbal* was a prisoner civil rights case. In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

'shown[n]"–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950(Internal citations omitted).

### III.    DISCUSSION

The Defendant raises a number of arguments in support of dismissal, but one is dispositive as a matter of law, and that is the economic loss doctrine.

In *Neibarger v. Universal Cooperatives, Inc.,* 439 Mich. 512, 486 N.W.2d 612, 615 (1992), the Michigan Supreme Court explained the economic loss doctrine as follows:

> "The economic loss doctrine, simply stated, provides that ' "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." ' This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts." (Ci v tations omitted).

In *Neibarger*, the plaintiffs, purchasers of allegedly defective goods, brought negligence and strict liability claims in addition to contract claims under the Uniform Commercial Code ("UCC").  Applying the economic loss doctrine, the Supreme Court found that the plaintiffs claimed purely economic losses arising out of the quality of the products, and that those claims were already addressed by the UCC.  Therefore, the Court held that the plaintiffs could not pursue their independent tort claims, remarking that "[a] contrary holding would not only serve to blur the distinction between tort and contract, but would undermine the purpose of the Legislature in adopting the UCC." *Id*., 439 Mich. at 528.  Put differently, "Article 2 would be rendered meaningless and 'contract law would drown in a sea of tort.'" *Id*. (quoting *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 866, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)).[3]

---

[3] The underlying rationale of the economic loss doctrine is applicable to claims under the Consumer Protection Act. *See Huron Tool and Engineering Company v. Precision*

Plaintiffs argue first that the economic loss doctrine does not apply to consumer transactions where there is no direct privity between the consumer and the defendant manufacturer.  That theory has been rejected by both Michigan and federal courts. In *Sherman v. Sea Ray Boats, Inc.*, 251 Mich.App. 41, 649 N.W.2d 783, 788 (2002), the court, analyzing *Neibarger* in the context of antecedent case law, found the "argument that the economic loss doctrine applies only to 'commercial' or 'non-consumer' transactions is without merit...."  Although *Sherman* declined to address the privity of contract issue (because it was not raised), it did cite with approval *Citizens Ins. Co. v. Osmose Wood Preserving, Inc.*, 231 Mich.App. 40, 585 N.W.2d 314 (1998), noting that the court in that case "held that the fact that the owner was not in a position to negotiate the sale or foresee the injury could not avoid the economic loss doctrine, even in the absence of privity of contract."  *Sherman*, 251 Mich.App. at 54.

In *Farm Bureau Insurance v. Deere Company*, 2009 WL 104139, *2 (W.D. Mich. 2009), Judge Quist, citing *Sherman*, held that neither privity nor the commercial nature of a transaction were required for application of the economic loss doctrine:

> "Farm Bureau argues that the economic loss doctrine has been applied in the absence of privity only where the parties were commercial entities and privity was irrelevant to the availability of a remedy for breach of warranty. It attempts to distinguish the cases in which courts have applied the doctrine in the absence of privity by noting, "[i]n those cases ..., the defendant was a supplier of a product, the plaintiff was the consumer of that product, and the economic losses emanated from the failure of the product to meet the expectations of the ... consumer." But, that is the case here. Furthermore, *Sherman* makes clear that whether the purchaser is a commercial entity is

*Consulting Services, Inc.*, 209 Mich.App. 365, 374, 532 N.W.2d 541 (1995) ("[a]lthough the Supreme Court's discussion [in *Niebarger* ] was linked closely to the UCC context of the case, the doctrine is not limited to the UCC")*;  Williams v. Scottrade, Inc*., 2006 WL 2077588, *6 (E.D.Mich. 2006)(Duggan, J.) (applying economic loss doctrine in a Michigan Consumer Protection Act case); *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3rd Cir. 2002)(the economic loss doctrine precludes fraud claim in a state consumer protection action).

irrelevant. The critical considerations are the nature of the harm, the source
of the implicated duty, and the policy interests underlying tort and contract
law. These unequivocally warrant the application of the economic loss
doctrine in this case."

By contrast, in *Auto-Owners v. Chrysler,* 129 Mich.App. 38, 341 N.W.2d 223

(1983), a 2-1 majority of a Court of Appeals panel found that the application of the

economic loss doctrine in a consumer case required privity of contract.  The dissent opined

that where the UCC provides for recovery of economic losses, the economic loss doctrine

precludes a tort action, regardless of whether the plaintiff is a consumer or a commercial

entity. In *Sullivan Industries, Inc. v. Double Seal Glass Co., Inc.*, 192 Mich.App. 333, 480

N.W.2d 623 (1992), the Court of Appeals adopted the reasoning of the *Auto-Owners*

dissent in the context of a commercial transaction. *Sullivan Industries* cited *Great*

*American Insurance Co. v. Paty's, Inc.*, 154 Mich.App. 634, 641, 397 N.W.2d 853 (1986),

where the court observed that "the dissent in *Auto-Owners* makes a strong argument for

the proposition that a contractual relationship is unnecessary to invoke the [economic loss

doctrine]."

In a recent decision, the Michigan Supreme Court put to rest the question of

whether lack of privity in a consumer transaction precludes application of the economic

loss doctrine.  *See Davis v. Forest River, Inc.*, __Mich.__, 774 N.W.2d 327 (2009).  *Davis*

involved the consumer sale of a recreational vehicle. There was no privity between the

purchaser plaintiff and the defendant manufacturer.  In the lower court decision, *Davis v.*

*Forest River, Inc.* 278 Mich.App. 76, 91, 748 N.W.2d 887 (2008), the Court of Appeals

declined to apply the UCC and the economic loss doctrine based on lack of privity, stating:

"[T]he UCC and the economic-loss doctrine apply to situations where the
parties have some kind of contractual relationship with each other. No such
contractual relationship existed here. The UCC and the economic-loss
doctrine therefore simply do not apply."

-6-

In its order granting leave to appeal (*Davis v. Forest River, Inc.*, 483 Mich. 985, 764 N.W.2d 278 (2009)), the Supreme Court directed the parties to address a number of issues, including "whether the UCC requires privity to revoke acceptance of [a] purchase contract," and "whether the economic loss doctrine and the UCC...apply to the plaintiff consumer's claims for breach of warranty."  In its final order, found at 774 N.W.2d at 328, the Supreme Court vacated the judgment of the Court of Appeals and held that "the Uniform Commercial Code applies to this breach of warranty action, as it involves the sale of goods."  Consequently, contrary to the Court of Appeals decision that the Supreme court vacated, the economic loss doctrine also applied, notwithstanding lack of privity between the consumer and the manufacturer. *Davis* thus settles any conflict between *Auto Owners*, *Farm Bureau Insurance* and *Sea Ray Boats*.[4]

The next question is whether the *intentional* torts alleged in Count II (common law fraud) and Count III (silent fraud) of the complaint are exceptions to the economic loss doctrine.  In *Huron Tool and Engineering Company v. Precision Consulting Services, Inc.*, 209 Mich.App. 365, 532 N.W.2d 541 (1995), the court held that a claim of fraud in the inducement could survive independently of breach of contract or breach of warranty claims, so long as the fraud claim was extraneous to the contractual or warranty dispute. *Id.*, 209 Mich.App. at 372-75. The court explained that "a claim of fraud in the inducement, by definition, redresses misrepresentations that induce the buyer to enter into a contract *but that do not in themselves constitute contract or warranty terms subsequently*

---

[4] In *Pack v. Damon Corp*. 434 F.3d 810, 819 -820 (6th Cir. 2006), the Sixth Circuit reviewed the development of Michigan case law from *Auto-Owners* to *Sullivan*, and concluded "that Michigan has abandoned the privity requirement for implied-warranty claims."  The Supreme Court's decision in *Davis* validates the Sixth Circuit's conclusion in *Pack*.  In the evolution of consumer law, the concept of privity is becoming an anachronism.

*breached by the seller*."  *Id.* at 374 (emphasis added).  However, "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold," *id.* at 373, the economic loss doctrine would preclude a fraud claim.  *See also Snyder v. Boston Whaler, Inc.*, 892 F.Supp. 955, 961 (W.D. Mich. 1994) (applying economic loss doctrine where the plaintiff's fraud claims did not arise independently of the contract claims).

In this case, the Plaintiffs' fraud claims are premised on the theory that the more expensive razor blade is represented to be of superior or different quality than the lesser expensive blade, when in fact they are identical.  The alleged fraud is inextricably related to the nature of the product and to the underlying consumer protection claims.  The only damages are economic.  Therefore, the fraud claims must be dismissed under the economic loss doctrine.[5]

## IV.   CONCLUSION

I therefore recommend that Defendant's Motion to Dismiss Counts II and III [Docket #18] be GRANTED, and that Count II (common law fraud) and Count III (silent fraud) of the Plaintiffs' complaint be DISMISSED.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof (including weekends and intervening holidays) as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474

---

[5] An example of a fraud claim that could be maintained independently of the underlying UCC, warranty or consumer protection action would be as follows.  The manufacturer advertises that every purchaser of its more expensive razor blade will be entered in a drawing to win a new car.  In fact, there is no drawing and there is no new car.  The fraud consists of false representations that have nothing to do with the quality or character of the product, and are thus extrinsic to the underlying warranty, contract or consumer protection claims.

U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections (including weekends and intervening holidays), the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the

court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: December 16, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 16, 2009.

s/Susan Jefferson
Case Manager
